UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

UNITED STATES OF AMERICA,
THE STATES OF OKLAHOMA, MISSOURI,
KANSAS, ILLINOIS, COLORADO,
MONTANA, AND TENNESSEE
EASTERN SHAWNEE TRIBE OF
OKLAHOMA, OTTAWA TRIBE OF
OKLAHOMA, PEORIA TRIBE OF INDIANS OF
OKLAHOMA, SENECA-CAYUGA NATION,
WYANDOTTE NATION, MIAMI TRIBE OF
OKLAHOMA, AND CHEROKEE NATION,

    Plaintiffs,


    v.             Civil No. 3:18-cv-5097

BLUE TEE CORP, BROWN STRAUSS, INC.,
DAVID P. ALLDIAN, RICHARD A. SECRIST,
AND WILLIAM M. KELLY,

    Defendants.


**CONSENT DECREE**

## TABLE OF CONTENTS

I.     BACKGROUND ............................................................................................... 1
II.    JURISDICTION ............................................................................................... 2
III.   PARTIES BOUND ........................................................................................... 2
IV.   DEFINITIONS.................................................................................................. 2
V.     STATEMENT OF PURPOSE ......................................................................... 6
VI.   PAYMENTS .................................................................................................... 6
VII.  FAILURE TO COMPLY WITH CONSENT DECREE ................................. 18
VIII. COVENANTS BY PLAINTIFFS.................................................................... 19
IX.   RESERVATION OF RIGHTS BY PLAINTIFFS ........................................... 20
X.     COVENANTS BY SETTLING DEFENDANTS ............................................ 21
XI.   EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION .................. 22
XII.  ACCESS TO INFORMATION AND RETENTION OF RECORDS ............. 23
XIII. NOTICES AND SUBMISSIONS ................................................................... 25
XIV. RETENTION OF JURISDICTION ................................................................. 28
XV.  INTEGRATION ............................................................................................ 28
XVI. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT ................... 29
XVII. SIGNATORIES/SERVICE............................................................................. 29
XVIII. FINAL JUDGMENT ..................................................................................... 29

# I. BACKGROUND

A.      The United States of America, on behalf of the Administrator of the U.S. Environmental Protection Agency ("EPA"), the United States Department of the Interior ("DOI") and United States Department of Agriculture ("USDA") (collectively "United States") filed a complaint in this matter against Blue Tee Corp ("Blue Tee") and Brown Strauss, Inc. ("BSI") pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9606 and 9607, seeking reimbursement of, or contribution towards, response costs incurred or to be incurred for response actions taken or to be taken, and/or payment for Natural Resource Damages ("NRD"), at or in connection with the release or threatened release of hazardous substances at the Sites (as defined below) identified in this Consent Decree.

B.      The States of Oklahoma, Kansas, Missouri, Montana, Colorado, Tennessee and Illinois (the "States") and the Eastern Shawnee Tribe of Oklahoma, the Ottawa Tribe of Oklahoma, the Peoria Tribe of Indians of Oklahoma, the Seneca-Cayuga Nation, the Wyandotte Nation, the Miami Tribe of Oklahoma and the Cherokee Nation (the "Tribes") joined in the complaint against Blue Tee and BSI in this Court alleging that Blue Tee and BSI are liable to the States and Tribes under Sections 106 and 107 of CERCLA, 42 U.S.C. §§ 9606 and 9607, and similar state and tribal law.

C.      In response to the release or threatened release of hazardous substances at or from the Sites, the United States, the States and/or the Tribes have taken response actions at the Sites pursuant to Section 104 of CERCLA, 42 U.S.C. § 9604, and will undertake additional response actions in the future.  The United States, the States, and/or the Tribes have conducted natural resource damage assessment at certain of the Sites pursuant to Section 107 of CERCLA, 42 U.S.C. § 9607, and will undertake additional assessment and restoration actions in the future.

D.      In performing either or both response and natural resource damage assessment and restoration activities at the Sites, Plaintiffs (as defined below) have incurred costs and will incur additional costs in the future.

E.      Plaintiffs allege that Blue Tee and BSI are liable persons pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and are jointly and severally liable for response costs, and NRD, including the reasonable costs of assessment and restoration planning, implementation and monitoring, incurred and to be incurred at the Sites.

F.      Plaintiffs also allege that Blue Tee, David P. Alldian, Richard A. Secrist, and William M. Kelly are liable to Plaintiffs under the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. § 3301 et. seq. and similar state and tribal laws.

G.      Blue Tee does not admit any liability to Plaintiffs arising out of the transactions or occurrences alleged in the complaint, and David P. Alldian, Richard A. Secrist, William M. Kelly and BSI do not admit, and expressly deny, any liability to Plaintiffs arising out of the transactions or occurrences alleged in the complaint.

H.      The United States has reviewed the Financial Information (as defined below) and insurance information submitted by Blue Tee and BSI to determine whether they are financially able to pay response costs and NRD incurred and to be incurred at the Sites. Based upon this

Financial Information and insurance information, the United States has determined that Blue Tee and BSI have limited financial ability to pay for such response costs and NRD.

I.     The United States, the States, the Tribes and Settling Defendants agree, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties (as defined below) in good faith, that settlement of this matter without further litigation and without the admission or adjudication of any issue of fact or law is appropriate and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby ORDERED, ADJUDGED and DECREED:

## II.     JURISDICTION

1.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1367, 1345, and 3306, and 42 U.S.C. §§ 9607 and 9613(b), and also has personal jurisdiction over all Settling Defendants pursuant to 28 U.S.C. §§ 1331, 1332, 1345, 1367, and 3306, and the Settling Corporate Defendants (as defined below) pursuant to 42 U.S.C. §§ 9607 and 9613(b). Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District. Settling Defendants shall not challenge entry or the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.     PARTIES BOUND

2.     This Consent Decree is binding upon the United States, the States, the Tribes, and upon Settling Defendants and their successors and assigns. Any change in ownership or corporate or other legal status, including, but not limited to, any transfer of assets or real or personal property, shall in no way alter the status or responsibilities of Settling Defendants under this Consent Decree.

## IV.     DEFINITIONS

3.     Unless otherwise expressly provided in this Consent Decree, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree, the following definitions shall apply:

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675.

"Consent Decree" shall mean this Consent Decree.

"Day" or "day" shall mean a calendar day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or State holiday, the period shall run until the close of business of the next working day.

"DOI NRDAR Fund" shall mean the DOI's Natural Resource Damage Assessment and Restoration Fund.

"DOJ" shall mean the U.S. Department of Justice and its successor departments, agencies, or instrumentalities.

"DOI" shall mean the U.S. Department of the Interior and its successor departments, agencies, or instrumentalities.

"Effective Date" shall mean the date upon which the approval of this Consent Decree is recorded on the Court's docket.

"EPA" shall mean the U.S. Environmental Protection Agency and its successor departments, agencies, or instrumentalities.

"EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

"Financial Information" shall mean those financial documents and responses to information requests provided to the United States between May 1, 2016 and February 28, 2018.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year. Rates are available online at https://www.epa.gov/superfund/superfund-interest-rates.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"National Priorities List" or "NPL" shall mean the list of national priorities among the known releases or threatened releases of hazardous substances, pollutants, or contaminants throughout the United States required by Section 105(a)(8)(B) of CERCLA, 42 U.S.C. § 9605(a)(8)(B), and presented as Appendix B of the National Contingency Plan.

"Natural Resource" or "Natural Resources" shall mean land, fish, wildlife, biota, air, water, ground water, drinking water supplies, and other such resources, belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States, the States and/or the Tribes.

"Natural Resource Damages" or "NRD" shall mean any damages recoverable by the United States, the States and/or the Tribes on behalf of the public for injury to, destruction of, loss of, loss of use of, or impairment of Natural Resources as a result of a release(s) of hazardous substances at and from the Sites, including, but not limited to: (i) the costs of assessing injury to, destruction of, loss of, or impairment of Natural Resources; (ii) the costs of restoration, rehabilitation, or replacement of injured or lost Natural Resources or of acquisition of equivalent resources and/or their services; (iii) compensation for injury, destruction, loss, loss of use, diminution in value, or impairment of Natural Resources; (iv) the costs of planning, implementing, and monitoring restoration activities; and (v) each

of the categories of recoverable damages described in 43 C.F.R. § 11.15 and applicable state or tribal law.

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

"Parties" shall mean the United States, the States, the Tribes and the Settling Defendants.

"Plaintiffs" shall mean the United States, the States and the Tribes.

"RCRA" shall mean the Solid Waste Disposal Act, 42 U.S.C. §§ 6901-6992 (also known as the Resource Conservation and Recovery Act).

"RIM" shall mean Restoration Planning, Implementation, and Monitoring.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Corporate Defendants" shall mean Blue Tee Corp. and Brown Strauss, Inc.

"Settling Defendants" shall mean Blue Tee Corp., Brown Strauss Inc., David P. Alldian, Richard A. Secrist, and William M. Kelly.

"Settling Individual Defendants" shall mean David P. Alldian, Richard A. Secrist, and William M. Kelly.

"Sites" shall mean the following sites:

"American Zinc, Lead and Smelting Company" or "AZLS" means the former American Zinc, Lead and Smelting Company Site in Montgomery County, Kansas.

"Anderson Calhoun Mine and Mill" means the Anderson-Calhoun Mine and Mill Site in Stevens County, Washington.

"ASARCO Taylor Springs" means the ASARCO Taylor Springs Superfund Site in Montgomery County, Illinois.

"Bonita Peak" means the Bonita Peak Mining District in San Juan County, Colorado.

"Caney Residential Yards" means the Caney Residential Yards Site in Montgomery County, Kansas.

"Carpenter-Snow Creek Mining District" means the Carpenter-Snow Creek Mining District Superfund Site in Cascade County, Montana, including the Silver Dyke Mine and Adit.

"Cherokee County" means the Cherokee County Superfund Site in Cherokee County, Kansas, including the Baxter Springs and Treece subsites.

"Dearing" means the Dearing Site in Montgomery County, Kansas.

"East La Harpe Smelter" means the East La Harpe Smelter Site in Allen County, Kansas.

"Grandview Mine and Mill" means the Grandview Mine and Mill Site in Pend Oreille County, Washington.

"Jasper County" means the Oronogo-Duenweg Mining Belt Superfund Site, commonly known as the Jasper County Superfund Site, encompassing approximately 270 square miles, including all the designated areas of contamination, surface streams, and any other areas of lead and zinc mining waste contamination located in Jasper County, Missouri, and the Iron Gates Extension Designated Area in Newton County, Missouri.

"Klondyke Tailings Removal" means the Klondyke Tailings Removal Site in Graham County, Arizona.

"Neodesha" means the Neodesha Site in Wilson County, Kansas.

"Newton County" means the Newton County Mine Tailings Superfund Site in Newton County, Missouri.

"Old American Zinc Plant" means the Old American Zinc Plant Superfund Site in St. Clair County, Illinois.

"Ouray" means the former American Lead and Zinc Mill Site in Ouray County, Colorado.

"Owens Zinc" means the Owens Zinc Site in Montgomery County, Kansas.

"Rockwood Iron and Metal" means the Rockwood Iron and Metal Site located in Roane County, Tennessee with a complete description of the property included in a Deed of Record in Deed Book W17, page 671 in the Registrar's Office in Roane County, Tennessee.

"Sauget" means the Sauget Industrial Corridor Site in St. Clair County, Illinois. For purposes of this Consent Decree only, Sauget includes the Big River Zinc Plant in Sauget, Illinois.

"Tar Creek" means the Tar Creek Superfund Site in Ottawa County, Oklahoma.

The definition for each of these sites shall be construed to include: (i) for those sites now or hereafter included on the NPL, all areas of a site as defined by EPA for purposes of the NPL, including any later expansion of such site as may be determined by EPA, and any natural resources affected or potentially affected by the release or threatened release of hazardous substances at or from such sites; or (ii) for those sites not included on the NPL, all areas and

natural resources affected or potentially affected by the release or threatened release of hazardous substances at or from such sites.

"Special Account" shall mean the site-specific special account, within the EPA Hazardous Substance Superfund, established for a Site by EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. § 9622(b)(3).

"States" shall mean the States of Oklahoma, Kansas, Missouri, Montana, Colorado, Tennessee, and Illinois.

"Tribes" shall mean the Eastern Shawnee Tribe of Oklahoma, the Ottawa Tribe of Oklahoma, the Peoria Tribe of Indians of Oklahoma, the Seneca-Cayuga Nation, the Wyandotte Nation, the Miami Tribe of Oklahoma and the Cherokee Nation.

"Trustee Council" shall mean a group of representatives of Federal, State, and Tribal, as applicable, natural resource trustees that conduct the natural resource damage assessment and restoration ("NRDAR") at a particular site. The Trustee Council is a formal decision-making body memorialized by a written agreement such as a Memorandum of Agreement.

"United States" shall mean the United States of America and each department, agency, and instrumentality of the United States, including EPA, DOI, and USDA.

"USDA" shall mean the United States Department of Agriculture, and its successor departments, agencies, or instrumentalities.

"USFS" shall mean the USDA Forest Service and its successor departments, agencies, or instrumentalities.

## V.     STATEMENT OF PURPOSE

4.       By entering into this Consent Decree, the mutual objective of the Parties is for Settling Defendants to make certain cash payments to resolve the Settling Corporate Defendants' alleged civil liability for the Sites under Sections 106 and 107 of CERCLA, 42 U.S.C. §§ 9606 and 9607, and/or the Settling Defendants' alleged civil liability under the FDCPA or similar state or tribal laws as provided in the Covenants by Plaintiffs in Section VIII, and subject to the Reservations of Rights by Plaintiffs in Section IX.

## VI.     PAYMENTS

5.       **Payments by Settling Defendants**. Settling Defendants shall pay to Plaintiffs the amount of $75,725,000, as provided in this Paragraph and Paragraph 6 below, and pursuant to the instructions in Paragraphs 9-23. Payment of this amount shall be made in six installments. Settling Defendants may coordinate among themselves so that only one payment per installment is made to each of the payees identified in Paragraph 6 below. At the time the first installment payment is made, Settling Defendants shall provide the United States with information demonstrating that each Settling Individual Defendant has contributed $500,000 towards the initial installment payment. Settling Individual Defendants agree to waive any claims against, and to receive no reimbursement from, Settling Corporate Defendants for Settling Individual Defendants' respective $500,000 contributions. Moreover, Settling Defendants shall also provide

the United States with information identifying the amount of contribution Blue Tee makes as to any installment payment.

- The first installment payment of $44,600,000 is due within 30 days after the Effective Date. Subsequent installment payments are due as follows:

- Second installment – $6,375,000 One Year and 30 Days after Effective Date;

- Third installment – $6,300,000 Two Years and 30 Days after Effective Date;

- Fourth installment – $6,225,000 Three Years and 30 Days after Effective Date;

- Fifth installment – $6,150,000 Four Years and 30 Days after Effective Date; and

- Sixth installment – $6,075,000 Five Years and 30 Days after Effective Date.

In the event any installment payment received by the plaintiff to whom the payment was directed includes an overpayment, that plaintiff shall apply the amount of the overpayment to an unpaid principal balance for a Site for that plaintiff. This overpayment will be applied to the next payment due such Site and can be applied to one or more Sites at a Plaintiff's discretion.

   a.     Blue Tee shall be jointly and severally liable for each of the payments in Section VI (Payments) until such time as $44,600,000 has been paid from its assets.

   b.     David P. Alldian, Richard A. Secrist, and William M. Kelly shall each individually contribute $500,000.00 to the first installment payment, and each of them shall remain jointly and severally liable for the balance of the payments until such time as each has contributed $3,000,000 to the settlement or the obligations for payment shall have been satisfied by the Settling Corporate Defendants. Upon contributing his individual $3,000,000.00 to the settlement, that Settling Individual Defendant will have no further obligations under this Consent Decree and it shall be fully satisfied as to him.

   6.     Settling Defendants shall make a single payment to the United States for all monies due the United States for each Installment payment. The United States shall then disburse the appropriate amounts to EPA, DOI or USFS in accordance with the table below. The installment payments due the United States are as follows:

   1st Installment = $37,601,617.31
   2nd Installment = $5,388,141.00
   3rd Installment = $5,324,751.11
   4th Installment = $5,261,361.21
   5th Installment = $5,197,971.31
   6th Installment = $5,134,581.41

For each of the payments required in Paragraph 5, Settling Defendants shall allocate the payments to the States and Tribes as follows, and pursuant to the instructions in Paragraphs 9-23:

| Site name | Payee | Payee account identification | First Installment | Second Installment | Third Installment | Fourth Installment | Fifth Installment | Sixth Installment |
|---|---|---|---|---|---|---|---|---|
| Anderson-Calhoun Mine and Mill, WA | EPA | EPA Special Account for Anderson-Calhoun Mine and Mill (SSID #: 109H) | $186,851.70 | $26,775.00 | $26,460.00 | $26,145.00 | $25,830.00 | $25,515.00 |
| ASARCO Taylor Springs, IL | EPA | EPA Special Account for ASARCO Taylor Springs (Acct #: B5AJ) | $6,949,103.70 | $995,775.00 | $984,060.00 | $972,345.00 | $960,630.00 | $948,915.00 |
| American Zinc and Lead Smelter, Caney, KS (Kansas Past Assessment Costs) | Kansas | KDHE Account for Blue Tee - AZLS NRD (Acct#: 7265-N128) | $1,004.38 | $143.92 | $142.23 | $140.54 | $138.84 | $137.15 |
| American Zinc and Lead Smelter, Caney, KS (Joint NRD) | DOI | DOI NRDAR Account for AZLS Site | $49,457.55 | $7,087.04 | $7,003.67 | $6,920.29 | $6,836.91 | $6,753.53 |
| American Zinc and Lead Smelter, Caney, KS (DOI Past Assessment Costs) | DOI | DOI NRDAR Fund Account (Acct #: 14X5198) | $3,013.15 | $431.77 | $426.69 | $421.61 | $416.53 | $411.45 |
| American Zinc and Lead Smelter, Caney, KS (Joint RIM) | DOI | DOI NRDAR Account for AZLS Site | $13,257.66 | $1,899.76 | $1,877.41 | $1,855.06 | $1,832.71 | $1,810.36 |

| Site name | Payee | Payee account identification | First Installment | Second Installment | Third Installment | Fourth Installment | Fifth Installment | Sixth Installment |
|---|---|---|---|---|---|---|---|---|
| Bonita Peak, CO | EPA | Bonita Peak Mining District Special Account (SSID #: A8M5) | $275,828.70 | $39,525.00 | $39,060.00 | $38,595.00 | $38,130.00 | $37,665.00 |
| Bonita Peak, CO | Colorado | CDPHE HMWMD Account for Bonita Peak | $275,828.70 | $39,525.00 | $39,060.00 | $38,595.00 | $38,130.00 | $37,665.00 |
| Caney Residential Yards, KS | EPA | EPA Special Account for Caney Residential Yards (SSID #: B7A3) | $1,303,513.05 | $186,787.50 | $184,590.00 | $182,392.50 | $180,195.00 | $177,997.50 |
| Carpenter-Snow Creek Mining District, MT (DOI NRD) | DOI | DOI NRDAR Fund Account (Acct #: 14X5198) | $143,252.97 | $20,527.50 | $20,286.00 | $20,044.50 | $19,803.00 | $19,561.50 |
| Carpenter-Snow Creek Mining District, MT (State NRD) | Montana | State of Montana | $573,011.88 | $82,110.00 | $81,144.00 | $80,178.00 | $79,212.00 | $78,246.00 |
| Carpenter-Snow Creek Mining District, MT (State Remedy, Montana Department of Environmental Quality (DEQ)) | Montana | Montana DEQ Fund 08175, Carpenter Snow Creek Remedy | $178,176.44 | $25,531.88 | $25,231.50 | $24,931.13 | $24,630.75 | $24,330.38 |
| Carpenter-Snow Creek Mining District, MT (USFS) | USFS | USFS Resource Impact Account (Acct# RIE05518) | $151,449.98 | $21,702.09 | $21,446.78 | $21,191.46 | $20,936.14 | $20,680.82 |

| Site name | Payee | Payee account identification | First Installment | Second Installment | Third Installment | Fourth Installment | Fifth Installment | Sixth Installment |
|---|---|---|---|---|---|---|---|---|
| Carpenter-Snow Creek Mining District, MT (EPA) | EPA | EPA Special Account for Carpenter Snow Creek Mining District (Acct #: 089X) | $858,216.53 | $122,978.53 | $121,531.73 | $120,084.92 | $118,638.11 | $117,191.31 |
| Cherokee County, KS | EPA | EPA Special Account for Cherokee County (Acct #: 0737) | $5,197,929.57 | $744,839.70 | $736,076.88 | $727,314.06 | $718,551.24 | $709,788.42 |
| Cherokee County, KS | Kansas | KDHE Account for Cherokee County O&M (Acct #: 7265-N119) | $1,751,174.13 | $250,935.30 | $247,983.12 | $245,030.94 | $242,078.76 | $239,126.58 |
| Dearing Site, KS | Kansas | KDHE Account for Dearing (Acct #: 7265-N127) | $75,630.45 | $10,837.50 | $10,710.00 | $10,582.50 | $10,455.00 | $10,327.50 |
| East La Harpe, KS - state response | Kansas | KDHE Account for East La Harpe Smelter NRD (Acct #: 7265-N123) | $164,607.45 | $23,587.50 | $23,310.00 | $23,032.50 | $22,755.00 | $22,477.50 |
| East La Harpe Smelter, KS (Joint NRD) | DOI | DOI NRDAR Fund Account (Account #14X5198) | $51,416.77 | $7,367.79 | $7,281.11 | $7,194.43 | $7,107.75 | $7,021.07 |
| East La Harpe Smelter, KS (Joint RIM) | DOI | DOI NRDAR Fund Account (Account #14X5198) | $27,158.97 | $3,891.76 | $3,845.97 | $3,800.19 | $3,754.40 | $3,708.62 |
| East La Harper Smelter, KS (DOI Past Assessment Costs) | DOI | DOI NRDAR Fund Account (Account #14X5198) | $7,800.94 | $1,117.84 | $1,104.69 | $1,091.54 | $1,078.39 | $1,065.24 |
| East La Harpe Smelter, KS (Kansas Past Assessment Costs) | Kansas | KDHE Account for East La Harpe Smelter NRD (Acct #: 7265-N123) | $2,600.31 | $372.61 | $368.23 | $363.85 | $359.46 | $355.08 |

| Site name | Payee | Payee account identification | First Installment | Second Installment | Third Installment | Fourth Installment | Fifth Installment | Sixth Installment |
|---|---|---|---|---|---|---|---|---|
| Grandview Mine and Mill, WA | EPA | EPA Special Account for Grandview Mine and Mill (SSID #: 10FF) | $186,851.70 | $26,775.00 | $26,460.00 | $26,145.00 | $25,830.00 | $25,515.00 |
| Jasper County, MO | EPA | EPA Special Account for Jasper County Site (Acct #: 0736) | $3,793,178.49 | $543,545.25 | $537,150.60 | $530,755.95 | $524,361.30 | $517,966.65 |
| Jasper County, MO | Missouri | State of Missouri | $468,819.81 | $67,179.75 | $66,389.40 | $65,599.05 | $64,808.70 | $64,018.35 |
| Klondyke Tailings Removal, AZ | EPA | EPA Special Account for Klondyke Tailings Removal (Acct #: 09TU) | $186,851.70 | $26,775.00 | $26,460.00 | $26,145.00 | $25,830.00 | $25,515.00 |
| Neodesha Smelter, KS | Kansas | KDHE Account for Peabody/Blue Tee - Neodesha Smelter (Acct #: 7265-N126) | $53,386.20 | $7,650.00 | $7,560.00 | $7,470.00 | $7,380.00 | $7,290.00 |
| Old American Zinc Plant, IL | EPA | EPA Special Account for Old American Zinc Plant (Acct #: B5A1) | $6,949,103.70 | $995,775.00 | $984,060.00 | $972,345.00 | $960,630.00 | $948,915.00 |
| Old American Zinc Plant, IL (NRD) | Illinois | Illinois Department of Natural Resources (Acct #: 831) | $186,851.70 | $26,775.00 | $26,460.00 | $26,145.00 | $25,830.00 | $25,515.00 |
| Ouray, CO | CO | CDPHE HMWMD Account for Ouray AZL | $31,500.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Owens Zinc, KS | Kansas | KDHE Account for Peabody/Blue Tee - Owens Zinc (Acct #: 7265-N125) | $53,386.20 | $7,650.00 | $7,560.00 | $7,470.00 | $7,380.00 | $7,290.00 |

| Site name | Payee | Payee account identification | First Installment | Second Installment | Third Installment | Fourth Installment | Fifth Installment | Sixth Installment |
|---|---|---|---|---|---|---|---|---|
| Rockwood, TN | Tennessee | State of Tennessee | $80,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Sauget Industrial Corridor, IL (Joint NRD) | DOI | DOI NRDAR Fund Account (Acct. # 14X5198) | $81,495.37 | $11,677.92 | $11,540.53 | $11,403.14 | $11,265.75 | $11,128.37 |
| Sauget Industrial Corridor, IL (past assessment) | DOI | DOI NRDAR Fund Account (Acct. # 14X5198) | $11,930.48 | $1,709.58 | $1,689.47 | $1,669.36 | $1,649.25 | $1,629.13 |
| Tar Creek, OK | EPA | EPA Special Account for Tar Creek (Acct #: 06JW04) | $3,483,313.05 | $499,142.94 | $493,270.67 | $487,398.40 | $481,526.13 | $475,653.86 |
| Tar Creek, OK | Ottawa Tribe | Payment for Seven Tribes' Response Costs at Tar Creek payable to "Ottawa Tribe of Oklahoma" | $887,242.24 | $127,137.78 | $125,642.05 | $124,146.31 | $122,650.57 | $121,154.83 |
| Tar Creek, OK | Oklahoma | Oklahoma Department of Environmental Quality ("ODEQ") Account (Acct #: 7200292) | $314,083.75 | $45,006.78 | $44,477.28 | $43,947.79 | $43,418.30 | $42,888.81 |
| Cherokee County Superfund Site, KS- (Groundwater) | Kansas | KDHE Account for Peabody/Blue Tee - Cherokee County GW (Acct #: 7265-N120) | $28,775.16 | $4,123.35 | $4,074.84 | $4,026.33 | $3,977.82 | $3,929.31 |
| Cherokee County Superfund Site, KS- (Joint NRD) | DOI | DOI NRDAR Fund Account (Acct #: 14X5198) | $1,046,456.72 | $149,952.50 | $148,188.35 | $146,424.20 | $144,660.05 | $142,895.91 |

| Site name | Payee | Payee account identification | First Installment | Second Installment | Third Installment | Fourth Installment | Fifth Installment | Sixth Installment |
|---|---|---|---|---|---|---|---|---|
| Jasper & Newton County Superfund Sites, MO- (Groundwater) | Missouri | State of Missouri | $414,362.33 | $59,376.24 | $58,677.70 | $57,979.15 | $57,280.61 | $56,582.06 |
| Jasper & Newton County Superfund Sites, MO- (Joint NRD) | DOI | DOI NRDAR Fund Account (Acct #: 14X5198) | $2,922,597.27 | $418,794.92 | $413,867.92 | $408,940.92 | $404,013.92 | $399,086.92 |
| Tar Creek Superfund Site, OK - Groundwater | Oklahoma | State of Oklahoma | $189,916.07 | $27,214.11 | $26,893.94 | $26,573.78 | $26,253.61 | $25,933.45 |
| Tar Creek Superfund Site, OK - Joint NRD (Eco) | DOI | DOI NRDAR Fund Account (Acct #: 14X5198) | $2,793,109.04 | $400,239.84 | $395,531.14 | $390,822.43 | $386,113.73 | $381,405.02 |
| Tar Creek Superfund Site, OK - NRD (Tribal) | Ottawa Tribe | Payment for Seven Tribes' NRD at Tar Creek payable to: "Ottawa Tribe of Oklahoma" | $1,127,986.34 | $161,635.32 | $159,733.73 | $157,832.14 | $155,930.54 | $154,028.95 |
| DOI Past Assessment Costs (Tristate Mining District) | DOI | DOI NRDAR Fund Account (Acct #: 14X5198) | $718,419.87 | $102,946.31 | $101,735.17 | $100,524.04 | $99,312.91 | $98,101.77 |
| Missouri Past Assessment Costs (Joint NRD) | Missouri | State of Missouri | $47,958.60 | $6,872.25 | $6,791.40 | $6,710.55 | $6,629.70 | $6,548.85 |
| Missouri Past Assessment Costs (groundwater) | Missouri | State of Missouri | $32,611.85 | $4,673.13 | $4,618.15 | $4,563.17 | $4,508.20 | $4,453.22 |

| Site name | Payee | Payee account identification | First Installment | Second Installment | Third Installment | Fourth Installment | Fifth Installment | Sixth Installment |
|---|---|---|---|---|---|---|---|---|
| Kansas Past Assessment Costs (groundwater) | Kansas | KDHE Account for Future NRD (Acct #: 7265-N101) | $11,510.06 | $1,649.34 | $1,629.94 | $1,610.53 | $1,591.13 | $1,571.72 |
| Oklahoma Past Assessment Costs (Joint NRD) | Oklahoma | State of Oklahoma | $959.17 | $137.45 | $135.83 | $134.21 | $132.59 | $130.98 |
| DOI RIM Costs (Tristate Mining District) | DOI | DOI NRDAR Fund Account (Acct #: 14X5198) | $210,058.68 | $30,100.46 | $29,746.33 | $29,392.21 | $29,038.09 | $28,683.96 |
| Kansas RIM Costs | Kansas | Kansas State Account for Peabody/Blue Tee - RIM Cost (Acct #: 7265-N124) | $7,673.38 | $1,099.56 | $1,086.62 | $1,073.69 | $1,060.75 | $1,047.82 |
| Oklahoma RIM Costs | Oklahoma | State of Oklahoma | $6,714.20 | $962.12 | $950.80 | $939.48 | $928.16 | $916.84 |
| Tribal RIM Costs | Ottawa Tribe | Payment for Seven Tribes' RIM Costs at Tar Creek payable to: "Ottawa Tribe of Oklahoma" | $32,611.85 | $4,673.13 | $4,618.15 | $4,563.17 | $4,508.20 | $4,453.22 |

7.     The DOI Natural Resource Damage Assessment and Restoration Fund ("DOI NRDAR Fund") shall deposit distributions received on behalf of the natural resource trustees for joint NRD claims into separate, Site-specific numbered accounts for the Sites listed in Paragraph 6 that have been or will be established within DOI's NRDAR Fund ("Restoration Accounts"). The funds received by the DOI NRDAR Fund shall be assigned pursuant to Section VI, Paragraph 6 to the Site-specific Restoration Accounts to allow the funds to be maintained as segregated accounts within the DOI NRDAR Fund.  The natural resource trustees shall use the funds in the Restoration Accounts, including all interest earned on such funds, for restoration activities at or in connection with each Site as directed by the Trustee Council at that Site, but such funds shall not be used for assessment activities. Funds received by DOI for the Carpenter Snow Creek Site, including all interest earned on such funds, shall be used for restoration and

assessment activities at or in connection with the Site as directed by the DOI.

8.    The funds received by the Ottawa Tribe of Oklahoma for the Tribes' damages are for the benefit of the Tribes and shall be held, managed, and disbursed for natural resource damage assessment and restoration purposes by consensus of the Tribes.  The funds received by the Ottawa Tribe of Oklahoma for the Tribes' response costs are for the benefit of the Tribes and shall be held, managed, and disbursed by consensus of the Tribes.

9.    **Payments to the United States.**  The Settling Defendants shall make payments by Fedwire Electronic Funds Transfer EFT to the U.S. Department of Justice account, in accordance with instructions provided to Settling Defendants by the Financial Litigation Unit (FLU) of the U.S. Attorney's Office for the Western District of Missouri after the Effective Date. The payment instructions provided by the FLU will include a Consolidated Debt Collection System (CDCS) number, which shall be used to identify all payments required to be made in accordance with this Consent Decree. The FLU will provide the payment instructions to:

> Gerald P. Greiman
> Spencer Fane LLP
> 1 North Brentwood Boulevard, Suite 1000
> St. Louis, MO 63105
> ggreiman@spencerfane.com

on behalf of Settling Defendants. Settling Defendants may change the individual to receive payment instructions on its behalf by providing written notice to DOJ and EPA of such change in accordance with Section XIII (Notices and Submissions).

10.    **Deposit of Payments to DOI.**  Each RIM payment to be paid pursuant to Paragraph 6 to DOI shall be deposited by DOI in each site-specific account to be retained and used by the DOI for restoration planning, implementation, and/or monitoring costs at or in connection with restoration of injured resources and their services for each Site.

11.    **Deposit of Payments to USFS.**  Each payment to be paid pursuant to Paragraph 6 to USFS shall be deposited by USFS in each site-specific special account to be retained and used to conduct or finance response actions at or in connection with each Site.

12.    **Deposit of Payments to EPA**. Each payment to be paid pursuant to Paragraph 6 to EPA shall be deposited by EPA in each site-specific special account to be retained and used to conduct or finance response actions at or in connection with each Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

13.    **Notice of Payment**. At the time of each payment, the paying Settling Defendant shall send notice that payment has been made (a) to EPA in accordance with Section XIII (Notices and Submissions), (b) to DOJ in accordance with Section XIII, and (c) to the EPA Cincinnati Finance Center (CFC) at:

**EPA CFC by email**:          cinwd_acctsreceivable@epa.gov

Such notice shall reference the CDCS Number, Site/Spill ID Numbers for each Site identified in Paragraph 6 where EPA is labelled as a payee, and DJ Number # 90-11-2-330/12.

14.     **Payment of State or Tribe Response Costs or Damages**. Payments to the States and Tribes shall be made in accordance with Paragraph 6, and Paragraphs 15-23 below. Payments to the States and the Tribes shall be made in the form of a check, except payments to the State of Montana, which shall be made via wire transfer. Payments made via check shall be deemed received on the date physically received at the identified address.

15.  Payments to the State of Illinois shall be made payable to "Natural Resources Restoration Trust Fund" and delivered to:

Illinois Department of Natural Resources
Attention: Deposit in Natural Resources Restoration Trust Fund (831)
c/o Tom Heavisides
One Natural Resources Way
Springfield, Illinois 62702

16.  Payments to the State of Kansas shall be made payable to "Kansas Department of Health and Environment" and delivered to:

Kansas Department of Health and Environment
Bureau of Environmental Remediation
Attention: Robert D. Jurgens, Director
1000 SW Jackson, Suite 410
Topeka, Kansas 66612-1367

17.  Payments to the State of Missouri shall be made payable to "State of Missouri" and delivered to:

Missouri Attorney General's Office
Attention: Mary Long, Assistant Attorney General
P.O. Box 899
Jefferson City, Missouri 65102

18.  Payments to the State of Montana:

a.      For State NRD: shall be made via wire transfer in accordance with instructions to be provided by the State of Montana. The paying Settling Defendants shall contact the Fiscal Bureau Chief of the Central Services Division of the Montana Department of Justice (Natacha Bird at nbird@mt.gov or 406-479-4644) at least 48 hours prior to initiating a transfer to provide notice of the date, time, and amount of the expected transfer and to confirm the wiring instructions, bank routing, and account numbers. The State of Montana shall use the principal amount and any interest or investment return on the Carpenter-Snow Creek NRD Account solely for assessment and to restore, replace, rehabilitate, or acquire the equivalent of the natural resources the State of Montana contends were injured or lost at the Carpenter-Snow Creek Mining District. No portion of the amounts deposited in the Carpenter-Snow Creek NRD Account

under this Settlement Agreement, or any interest or earnings thereon, is to be treated as State General Fund money, nor is any portion to be converted or transferred to the State General Fund.

b. <u>For State Remedial Action</u>: shall be made in accordance with electronic funds transfer in accordance with instructions to be provided by Montana DEQ. The paying Settling Defendants shall contact:

Jenny Chambers
Waste Management and Remediation Division Administrator
Montana Department of Environmental Quality
PO Box 200901
Helena, MT 59620-0901
(406) 444-6383
jchambers@mt.gov

at least 48 hours prior to initiating a transfer to provide notice of the date, time, and amount of the expected transfer and to confirm the wiring instructions, bank routing, and account numbers. The Montana DEQ shall retain and use the principal amount and any interest or investment return on the Carpenter-Snow Creek Remedy account to conduct or finance remedial actions at or connected to the Carpenter Snow Creek Site. No portion of the amounts deposited in the Montana DEQ Carpenter Snow-Creek Remedy account under this Settlement Agreement, or any interest or earnings thereon, is to be treated as State General Fund money, nor is any portion to be converted or transferred to the State General Fund.

19. Payment to the State of Tennessee shall be made payable to "Treasurer, State of Tennessee" and delivered to:

Tennessee Attorney General's Office
Attention: Wilson Buntin, Senior Assistant Attorney General
Environmental Division
P.O. Box 20207
Nashville, TN 37202

20. Payments to the State of Oklahoma shall be made payable to "State of Oklahoma" and delivered to:

Oklahoma Office of the Attorney General
Attention: Jennifer Lewis, Assistant Attorney General
313 NE 21st Street
Oklahoma City, Oklahoma 73105

21. Payments to the Oklahoma Department of Environmental Quality shall be made payable to "Oklahoma Department of Environmental Quality" and delivered to:

Oklahoma Department of Environmental Quality
Financial & Human Resources Management
Attention: Accounts Receivable
P.O. Box 2036
Oklahoma City, Oklahoma 73101-2036

22.    Payments to the Seven Tribes shall be made payable to the "Ottawa Tribe of Oklahoma" and delivered to:

The Ottawa Tribe of Oklahoma
Attention: Tabitha Langston
P.O. Box 110
Miami, Oklahoma 74355

23.    Payments to Colorado shall be made payable to the "Colorado Department of Public Health and Environment", shall reference the site name and Blue Tee settlement, and shall be delivered to:

Colorado Department of Public Health and Environment HMWMD
Attn: Joe Garmatz, B2
4300 Cherry Creek Drive South
Denver, CO 80246-1530

## VII.    FAILURE TO COMPLY WITH CONSENT DECREE

24.    If Settling Defendants fail to make any payment required by Paragraph 5 within forty-five (45) days after the required due date, any and all remaining installment payments shall become due immediately upon such failure. If any payment is not timely made, Interest shall accrue from the date of default. Interest shall continue to accrue on any unpaid amounts until the total amount due has been received.

25.    **Stipulated Penalty**

a.    If any amounts due under Paragraph 5 are not paid by the required date, Settling Defendants shall be in violation of this Consent Decree and shall pay, as a stipulated penalty, in addition to the Interest required by Paragraph 24 (Interest on Payments), $500 per violation per day that such payment is late.  In addition, if Settling Defendants miss a payment to more than one of the payees identified in Paragraph 6 as part of the same installment payment due date, the total Stipulated Penalty amount accruing under this Paragraph 25 for those missed payee payments shall not exceed $3,500 per day.

b.    Stipulated penalties are due and payable within 30 days after the date of the demand for payment of the penalties by the United States. All payments to the United States under this Paragraph shall be identified as "stipulated penalties" and shall be made by Fedwire EFT in accordance with instructions provided to Settling Defendants by the Financial Litigation Unit (FLU) of the U.S. Attorney's Office for the Western District of Missouri, noting the DJ Number 90-11-2-330/12.

      c.      At the time of payment, Settling Defendants shall send notice that payment has been made to DOJ in accordance with Paragraph 13 (Notice of Payment).

      d.      Penalties shall accrue as provided in this Paragraph 25 (Stipulated Penalty) regardless of whether the United States, the States or the Tribes have notified Settling Defendants of the violation or made a demand for payment, but need only be paid upon demand. All penalties shall begin to accrue on the day after payment or performance is due or the day a violation occurs, and shall continue to accrue through the date of payment or the final day of correction of the noncompliance or completion of the activity. Nothing in this Consent Decree shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

26.      If the United States, a State, or a Tribe brings an action to enforce this Consent Decree against one or more of the Settling Defendants, each such Settling Defendant shall reimburse the United States, the State or the Tribe, as applicable, for all costs of such action, including but not limited to costs of attorney time, unless the Court rules in favor of a Settling Defendant, in which instance no costs, expenses, or attorneys' fees shall be due or owing from such Settling Defendant.

27.      Payments made under this Section shall be in addition to any other remedies or sanctions available to Plaintiffs by virtue of a Settling Defendant's failure to comply with the requirements of this Consent Decree.

28.      Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive payment of any portion of the stipulated penalties that have accrued pursuant to this Consent Decree. Payment of stipulated penalties shall not excuse Settling Defendant from payment as required by Section VI (Payments) or from performance of any other requirements of this Consent Decree.

## VIII.   COVENANTS BY PLAINTIFFS

29.      Except as specifically provided in Section IX (Reservation of Rights by Plaintiffs), the United States, the States and the Tribes covenant not to sue or to take administrative action against Blue Tee, BSI, BSI Holdings, Inc., the Brown Strauss, Inc. Employee Stock Ownership Trust (the "ESOP"), and the Trustee of the ESOP pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), or similar state or tribal laws (including as to the States and the Tribes, common law claims), regarding the Sites. With respect to present and future liability, these covenants shall take effect upon the Effective Date. These covenants are conditioned upon the satisfactory performance by Settling Defendants of their obligations under this Consent Decree, including but not limited to, payment of all amounts due under Section VI, and any Interest or stipulated penalties due thereon under Section VII (Failure to Comply with Consent Decree). As to the Settling Corporate Defendants, these covenants are also conditioned upon the veracity and completeness of the Financial Information and the insurance information provided to EPA and the financial, insurance, and indemnity certification each makes in Paragraph 51. These covenants extend only to Blue Tee, BSI, BSI Holdings, Inc., the ESOP, and the Trustee of the ESOP and do not extend to any other person.

30.      The United States, on behalf of DOI, EPA, and USDA, the States, and the Tribes covenant not to sue and agree not to pursue any claims, actions, or legal challenge regarding any

money or asset transfers, which have been disclosed to Plaintiffs in writing, from Blue Tee or BSI to any of the following: Blue Tee, BSI, BSI Holdings, Inc., the ESOP, David P. Alldian, Richard A. Secrist, or William M. Kelly, and occurred before January 24, 2018.

31.     Plaintiffs agree and acknowledge that each Settling Defendant's liability or potential liability under, and responsibility to perform, pay pursuant to, or comply with, any administrative or judicially-approved settlement, decree, or order, other than this Consent Decree, issued for or entered into concerning a Site identified in Section IV, above, shall be and is resolved upon entry of this Consent Decree, subject to the potential need to formally secure termination of any such judicial settlement, decree, or order. Plaintiffs will cooperate in good faith with Settling Defendants to secure termination of any such settlement, decree or order. To the extent that Settling Defendants have assignable access rights concerning the Sites, by signing this Consent Decree each of them assigns such rights to the United States and to the State in which the Site is located.

## IX.     RESERVATION OF RIGHTS BY PLAINTIFFS

32.     The United States, States, and Tribes reserve, and this Consent Decree is without prejudice to, all rights against Settling Defendants with respect to all matters not expressly included within Paragraphs 29 and 30 (Covenants by Plaintiffs). Notwithstanding any other provision of this Consent Decree, the United States, States, and Tribes reserve all rights against Settling Defendants with respect to:

          a.     liability for failure of a Settling Defendant to meet a requirement of this Consent Decree;

          b.     criminal liability;

          c.     liability based on the ownership or operation of the Sites by Settling Defendants when such ownership or operation commences after signature of this Consent Decree by Settling Defendants;

          d.     liability based on Settling Defendants' transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of a hazardous substance or a solid waste at or in connection with the Sites, after signature of this Consent Decree by Settling Defendants; and

          e.     liability arising from the past, present, or future disposal, release or threat of release of a hazardous substance, pollutant, or contaminant outside of the Sites.

33.     This Consent Decree is based, in part, on Settling Corporate Defendants' financial condition and ability to pay. Settling Corporate Defendants' potential liability to Plaintiffs resolved under this Decree could be substantially higher than agreed to in this Consent Decree. Therefore, in the event that any Settling Corporate Defendant either files or becomes subject to a petition for relief under the Bankruptcy Code, Plaintiffs may assert, notwithstanding any other provision of the Consent Decree, claims for the full amount of such Settling Corporate Defendant's potential liability. Each Settling Corporate Defendant reserves the right to oppose such claims on any ground other than one alleging that the amount of liability is limited by the terms of this Consent Decree. The provisions of the Bankruptcy Code and applicable non-bankruptcy law shall then govern Plaintiffs' and Settling Defendants' rights.

34.     Notwithstanding any other provision of this Consent Decree, the United States, States, and Tribes reserve, and this Consent Decree is without prejudice to, their rights against Blue Tee or BSI to reinstitute or reopen this action, or to commence a new action seeking relief other than as provided in this Consent Decree, if the Financial Information or the insurance information provided by such party, or the financial, insurance, or indemnity certification made by such party in Paragraph 51, is in any material respect false or inaccurate.

## X.     COVENANTS BY SETTLING DEFENDANTS

35.     Settling Defendants covenant not to sue and agree not to assert any claims or causes of action against the United States, the States, the Tribes, or their contractors or employees, with respect to the Sites and this Consent Decree, including but not limited to:

a.     any direct or indirect claim for reimbursement from the Hazardous Substance Superfund or similar state funds, based on Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law, relating to the Sites;

b.     any claim arising out of response actions at or in connection with the Sites, including any claim under the United States Constitution, the States' Constitutions, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law; or

c.     any claim pursuant to Sections 107 or 113 of CERCLA, 42 U.S.C. §§ 9607 or 9613, Section 7002(a) of RCRA, 42 U.S.C. § 6972(a), or state law, relating to the Sites.

36.     Except as provided in Paragraph 38 (claims against other PRPs) and Paragraph 43 (Res Judicata and other Defenses), these covenants shall not apply in the event the United States, the States or the Tribes bring a cause of action or issue an order pursuant to any of the reservations set forth in Section IX (Reservations of Rights by Plaintiffs), other than in Paragraph 32.a (liability for failure to meet a requirement of the Consent Decree) or 32.b (criminal liability), but only to the extent that Settling Defendants' claims arise from the same response action or response costs or NRDs that the United States, a State or a Tribe is seeking pursuant to the applicable reservation.

37.     Nothing in this Consent Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. 300.700(d).

38.     Settling Defendants agree not to assert any claims and to waive all claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) that they may have for response costs and for natural resource damages including assessment costs relating to the Sites against any third party who is a potentially responsible party ("PRP") under CERCLA, and similar state or tribal law, at the Sites. This waiver shall not apply with respect to any defense, claim, or cause of action that a Settling Defendant may have against any person if such person asserts a claim or cause of action relating to any of the Sites against a Settling Defendant.

## XI.     EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION

39.     Except as provided in Paragraph 38 (claims against other PRPs), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. Except as provided in Section X (Covenants by Settling Defendants), each of the Parties expressly reserves any and all rights (including, but not limited to, under Section 113 of CERCLA, 42 U.S.C. § 9613), defenses, claims, demands, and causes of action that it may have with respect to any matter, transaction, or occurrence relating in any way to the Sites against any person not a Party to this Consent Decree. Nothing in this Consent Decree diminishes the right of the Plaintiffs, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to pursue any such persons to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

40.     The Parties agree, and by entering this Consent Decree this Court finds, that this settlement constitutes a judicially-approved settlement pursuant to which the Settling Corporate Defendants have, as of the Effective Date, resolved liability to the Plaintiffs within the meaning of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and are entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for the "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are all response actions taken or to be taken and all response costs, and Natural Resource Damages, incurred or to be incurred, at or in connection with the Sites, by the Plaintiffs or any other persons, except for the States of New Mexico and Utah or of the Navajo Nation associated with the Bonita Peak Site, provided, however, that if any Plaintiff exercises rights under the reservations in Section IX (Reservations of Rights by Plaintiffs), other than in Paragraphs 32.a (liability for failure to meet a requirement of Consent Decree) or 32.b (criminal liability), the "matters addressed" in this Consent Decree will no longer include those response costs, response actions, or Natural Resource Damages that are within the scope of the exercised reservation.

41.     The Parties further agree, and by entering this Consent Decree this Court finds, that the complaint filed by the Plaintiffs in this action is a civil action within the meaning of Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), and that this Consent Decree constitutes a judicially-approved settlement pursuant to which Settling Corporate Defendants have, as of the Effective Date, resolved liability to the Plaintiffs within the meaning of Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B).

42.     Each of the Settling Defendants shall, with respect to any suit or claim brought by it for matters related to this Consent Decree, notify EPA and DOJ, the States and the Tribes, in writing no later than 60 days prior to the initiation of such suit or claim. Such Settling Defendant also shall, with respect to any suit or claim brought against it for matters related to this Consent Decree, notify EPA and DOJ, the States and the Tribes, in writing within 10 days after service of the complaint or claim upon it. In addition, such Settling Defendant shall notify EPA and DOJ, the States and the Tribes within 10 days after service or receipt of any Motion for Summary Judgment, and within 10 days after receipt of any order from a court setting a case for trial, for matters related to this Consent Decree.

43.     **Res Judicata and Other Defenses.**  In any subsequent administrative or judicial proceeding initiated by the United States, a State or a Tribe for injunctive relief, recovery of response costs, natural resource damages, or other relief relating to the Sites, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States, the States, or the Tribes in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the Covenants by Plaintiffs set forth in Section VIII.

## XII.     ACCESS TO INFORMATION AND RETENTION OF RECORDS

44.     Blue Tee shall provide to the United States, the States and the Tribes, upon request, copies of all non-privileged records, reports, documents, and other information (including records, reports, documents and other information in electronic form) (hereinafter referred to as "Records") within its possession or control or that of its respective contractors or agents relating to activities at any of the Sites including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information regarding the Sites.  The requirements of this Paragraph will not prevent Blue Tee from dissolving. For clarity, the United States, the States, and the Tribes acknowledge that Records held or maintained by the Gold Fields Liquidating Trust, Peabody Energy Corporation ("Peabody"), Gold Fields Mining, LLC ("Gold Fields"), or any of their affiliated companies, contractors, employees, or agents are not within the possession or control of Blue Tee.

45.     Until 2 years after the Effective Date, Blue Tee shall preserve and retain all non-identical copies of Records now in its possession or control, or that come into its possession or control, that relate in any manner to its liability under CERCLA with respect to a Site, provided, however, that if Blue Tee is potentially liable as an owner or operator of a Site, Blue Tee must retain, in addition, all Records that are known by Blue Tee to relate to the alleged liability of any other person under CERCLA with respect to that Site. Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.  For clarity, the United States, the States, and the Tribes acknowledge that Records held or maintained by the Gold Fields Liquidating Trust, Peabody, Gold Fields, or by any of their affiliated companies, contractors, employees, or agents are not within the possession or control of Blue Tee.

46.     After the conclusion of the record retention period, or at such time as Blue Tee may choose to dissolve, Blue Tee shall notify the United States, the States, and the Tribes at least 90 days prior to the destruction of any such Records, and, upon request by the United States, the States, or the Tribes and subject to the terms of Paragraph 48 (Privileged and Protected Claims), Blue Tee shall deliver any such Records to the United States, the States, or the Tribes, depending on who requests the Records.

47.     If within the 2 year record retention period described in this Section XII, the United States, the States and/or the Tribes wish to obtain copies of the Records identified in Paragraphs 44 and 45 as subject to retention or disclosure but which are within the possession or control of attorneys, contractors or agents retained by Peabody or Gold Fields in Blue Tee's name or on its behalf, Blue Tee hereby consents to the production of such Records and will

reasonably cooperate in such Records being made available to the requesting party by such attorneys, contractors, or agents.

48. **Privileged and Protected Claims**

      a.     Blue Tee may assert that all or part of a Record is privileged or protected as provided under federal law, provided it complies with Paragraph 48.b, and except as provided in Paragraph 48.c.

      b.     If Blue Tee asserts a claim of privilege or protection, it shall provide Plaintiffs with the following information regarding such Record: its title; its date; the name, title, affiliation (e.g., company or firm), and address of the author, each addressee, and of each recipient; a description of the Record's contents; and the privilege or protection asserted. If a claim of privilege or protection applies only to a portion of a Record, Blue Tee shall provide the Record to Plaintiffs in redacted form to mask the privileged or protected information only. Blue Tee shall retain all Records that they claim to be privileged or protected until the United States, a State or a Tribe has had a reasonable opportunity to dispute the privilege or protection claim and any such dispute has been resolved in Blue Tee's favor.

      c.     Blue Tee may make no claim of privilege or protection regarding:

          (1)     any data regarding the Sites, including but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, radiological, or engineering data, or the portion of any other Record that evidences conditions at or around a Site; or

          (2)     the portion of any Record that Blue Tee is required to create or generate pursuant to this Consent Decree.

49. **Business Confidential Claims**. Blue Tee may assert that all or part of a Record submitted to Plaintiffs under this Section is business confidential to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b). Blue Tee shall segregate and clearly identify all Records or parts of Records submitted under this Consent Decree for which Blue Tee asserts a business confidentiality claim. Records that Blue Tee claims to be confidential business information will be accorded the protection specified in 40 C.F.R. Part 2, Subpart B. If no claim of confidentiality accompanies Records when they are submitted to the United States, a State or a Tribe, or if EPA, DOI, or USDA has notified Blue Tee that the Records are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2 Subpart B, the public may be given access to such Records without further notice to Blue Tee.

50. Notwithstanding any provision of this Consent Decree, the United States, the States and the Tribes retain all of their information gathering and inspection authorities and rights, including enforcement actions related to such rights, under CERCLA, RCRA, and any other applicable statutes or regulations.

51. <u>Certification.</u> The Settling Corporate Defendants each certify that, to the best of its knowledge and belief, after thorough inquiry, it has:

a. fully complied with any and all EPA and State written (including email) requests for information regarding the Sites and its financial circumstances, including but not limited to insurance and indemnity information, pursuant to Sections 104(e) and 122(e)(3)(B) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e)(3)(B), Section 3007 of RCRA, 42 U.S.C. § 6927, and state law;

b. submitted to EPA financial information that fairly, accurately, and materially sets forth its financial circumstances, and that those circumstances have not materially changed between the time the financial information was submitted to EPA and the time Settling Defendant executes this Consent Decree; and

c. fully disclosed any information regarding the existence of any insurance policies or indemnity agreements that may cover claims relating to cleanup of the Site, and submitted to EPA upon request such insurance policies, indemnity agreements, and information.

## XIII. NOTICES AND SUBMISSIONS

52. Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing. Except as otherwise provided, notice to a Party by email (if that option is provided below) or by regular mail in accordance with this Section satisfies any notice requirement of the Consent Decree regarding such Party.

**As to DOJ by email**:        eescasemanagement.enrd@usdoj.gov and
David.Dain@usdoj.gov

**As to DOJ by regular mail**:    EES Case Management Unit
U.S. Department of Justice
Environment and Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044-7611
Re: DJ # 90-11-2-330/12 and 90-11-2-330/13

**As to EPA**:          Robert Roberts
Attorney Advisor
United States Environmental Protection Agency
1200 Pennsylvania Avenue NW
Room Number 5226D
Washington, DC 20460
Roberts.Robert@epa.gov

**As to DOI**:          Environmental Restoration Branch
Office of the Solicitor
US Department of the Interior
Attention: Amy Horner Hanley, Senior Attorney
1849 C Street NW, MS 6316
Washington, DC  20240

Amy.hanley@sol.doi.gov

**As to USDA:**                      Babak Rastgoufard
                                     Office of the General Counsel
                                     U.S. Department of Agriculture
                                     26 Fort Missoula Road
                                     Missoula, Montana 59804
                                     babak.rastgoufard@usda.gov

**As to the State of Oklahoma**:     Oklahoma Office of the Attorney General
                                     Attention: Jennifer Lewis, Assistant Attorney General
                                     313 NE 21st Street
                                     Oklahoma City, Oklahoma 73105
                                     Jennifer.Lewis@oag.ok.gov

                                     Oklahoma Department of Environmental Quality
                                     Attention: Office of the General Counsel
                                     707 N. Robinson
                                     Oklahoma City, Oklahoma 73102
                                     Pam.Dizikes@deq.ok.gov

**As to the State of Missouri**:     Missouri Attorney General's Office
                                     Attention: Mary Long, Assistant Attorney General
                                     P.O. Box 861
                                     St. Louis, Missouri 63188
                                     Mary.Long@ago.mo.gov

                                     Danny Lyskowski
                                     Missouri Department of Natural Resources
                                     P.O. Box 176
                                     Jefferson City, Missouri 65102
                                     Danny.Lyskowski @dnr.mo.gov

**As to the State of Kansas**:       Kansas Department of Health and Environment
                                     Bureau of Environmental Remediation
                                     Attention: Robert D. Jurgens, Director
                                     1000 SW Jackson, Suite 410
                                     Topeka, Kansas 66612-1367
                                     Bob.Jurgens@ks.gov

**As to the State of Illinois**:     Illinois Department of Natural Resources
                                     Attention: Tom Heavisides
                                     One Natural Resources Way
                                     Springfield, Illinois 62702
                                     Tom.Heavisides@Illinois.gov

| | |
|---|---|
| **As to the State of Montana**: | Restoration Program Chief<br>Montana Natural Resource Damage Program<br>Montana Department of Justice<br>P.O. Box 201425<br>1720 Ninth Avenue<br>Helena, Montana 59620-1425<br>DougMartin@mt.gov |
| | Thomas Stoops<br>Waste Management and Remediation/Federal Superfund<br>and Construction Bureau Chief<br>Montana Department of Environmental Quality<br>PO Box 200901<br>1225 Cedar Street<br>Helena, MT 59620-0901<br>TStoops@mt.gov |
| **As to the State of Colorado:** | David Banas<br>Senior Assistant Attorney General<br>Colorado Department of Law<br>Natural Resources and Environment Section<br>1300 Broadway 7th Floor<br>Denver, CO 80203<br>(720) 508-6284<br>David.banas@coag.gov |
| **As to the State of Tennessee:** | Wilson S. Buntin<br>Senior Assistant Attorney General<br>Tennessee Attorney General's Office<br>Environmental Division<br>P.O. Box 20207<br>Nashville, TN 37202<br>wilson.buntin@ag.tn.gov |
| **As to the Tribes:** | Brian J. Cleary<br>The Cleary Law Group, P.C.<br>Seven Tribes' Special Counsel<br>9030 N. Hess Street, #362<br>Hayden, Idaho 83835<br>Brian@ClearyLawGroup.com |
| **As to Blue Tee:** | Gerald P. Greiman<br>Spencer Fane LLP<br>1 North Brentwood Boulevard, Suite 1000<br>St. Louis, MO 63105<br>ggreiman@spencerfane.com |

**As to BSI**:
Ryan Secrist
Brown Strauss, Inc.
2495 Uravan St., Aurora, CO 80011
rsecrist@brownstrauss.com

Ronald M. Eddy
Sherman & Howard L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
reddy@shermanhoward.com

**As to David P. Alldian**:
Robert Labate
Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
robert.labate@hklaw.com

**As to Richard A. Secrist**:
Robert Labate
Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
robert.labate@hklaw.com

**As to William M. Kelly**:
Robert Labate
Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
robert.labate@hklaw.com

## XIV. RETENTION OF JURISDICTION

53. This Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree.

## XV. INTEGRATION

54. This Consent Decree constitutes the final, complete and exclusive agreement and understanding between the Parties with respect to the settlement embodied in this Consent Decree. The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree. The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

## XVI.   LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

55.     This Consent Decree shall be lodged with the Court for a period of at least 30 days for public notice and comment. The United States and Montana reserve the right to withdraw or withhold their consent if the comments regarding the Consent Decree disclose facts or considerations that indicate that this Consent Decree is inappropriate, improper, or inadequate. Settling Defendants agree not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree, unless the United States or Montana has notified Settling Defendants in writing that they no longer support entry of the Consent Decree.

56.     If for any reason this Court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the sole discretion of any Party and the terms of the Consent Decree may not be used as evidence in any administrative or judicial proceeding between the Parties.

## XVII.  SIGNATORIES/SERVICE

57.     Each undersigned representative of a Settling Defendant, the Assistant Attorney General, U.S. Department of Justice, Environment and Natural Resources Division, and the undersigned representatives of the States and Tribes, certifies that he or she is authorized to enter into the terms and conditions of this Consent Decree and to execute and bind legally such Party to this document.

58.     Settling Defendants agree not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree, unless the United States or Montana has notified Settling Defendants in writing that it no longer supports entry of the Consent Decree.

59.     Settling Defendants shall identify, on the attached signature page, the name and address of an agent who is authorized to accept service of process by mail on its behalf with respect to all matters arising under or relating to this Consent Decree. Settling Defendants agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including but not limited to, service of a summons.

## XVIII. FINAL JUDGMENT

60.     Upon entry of this Consent Decree by the Court, this Consent Decree shall constitute the final judgment between and among the United States, the States, the Tribes and Settling Defendants. The Court enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS __ DAY OF _____, 2018.

_____
United States District Judge

Signature Page for Consent Decree Regarding Matter Against Blue Tee Corp., Brown Strauss, Inc., David P. Alldian, Richard A. Secrist, and William M. Kelly:

**FOR THE UNITED STATES OF AMERICA**:

JEFFREY H. WOOD
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice
Washington, D.C.

___/s/ David L. Dain_____
DAVID L. DAIN
KATHERINE MATTHEWS
ALAN TENENBAUM
PATRICK CASEY
SEAN CARMAN
Environmental Enforcement Section
U.S. Department of Justice
999 18th Street
South Terrance, Suite 370
Denver, CO
(303) 844-7371
David.dain@usdoj.gov

TIMOTHY A. GARRISON
United States Attorney
Western District of Missouri

____/s/ Charles M. Thomas____
Charles M. Thomas, MO Bar #28522
Assistant United States Attorney
Charles Evans Whittaker Courthouse
400 East Ninth Street, Room 5510
Kansas City, MO  64106
Telephone:  (816) 426-3130
E-mail:  charles.thomas@usdoj.gov

Signature Page for Consent Decree Regarding Matter Against Blue Tee Corp., Brown Strauss, Inc., David P. Alldian, Richard A. Secrist, and William M. Kelly:


 /s/ Susan Parker Bodine
SUSAN PARKER BODINE
Assistant Administrator for Enforcement and
  Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

Signature Page for Consent Decree Regarding Matter Against Blue Tee Corp., Brown Strauss, Inc., David P. Alldian, Richard A. Secrist, and William M. Kelly:

## FOR THE STATE OF COLORADO

__10/26/18___                    _/s/ Cynthia H. Coffman_____
Dated                            Cynthia H. Coffman
                                 Colorado Attorney General
                                 and State Natural Resources Trustee
                                 Colorado Department of Law
                                 1300 Broadway
                                 Denver, CO 80203

__10/24/18_____                  __/s/ Martha Rudolph_____
Dated                            Martha Rudolph
                                 Director of Environmental Programs
                                 Colorado Department of Public Health and Environment
                                 and State Natural Resources Trustee
                                 4300 Cherry Creek Drive South
                                 Denver, CO 80246

__10/25/18_____                 ___/s/ Bob Randall_____
Dated                            Bob Randall
                                 Executive Director
                                 Colorado Department of Natural Resources
                                 and State Natural Resources Trustee
                                 1313 Sherman Street
                                 Denver CO, 80203

Signature Page for Consent Decree Regarding Matter Against Blue Tee Corp., Brown Strauss, Inc., David P. Alldian, Richard A. Secrist, and William M. Kelly:

## For the State of Kansas


Date:


   /s/ Jeff Andersen
Jeff Andersen
Secretary
Kansas Department of Health and Environment
1000 SW Jackson
Topeka, Kansas 66612


Date:


  /s/ Kate Gleeson
Kate Gleeson
Special Assistant Attorney General
Senior Environmental Attorney
Kansas Department of Health and Environment
1000 SW Jackson
Topeka, Kansas 66612

Signature Page for Consent Decree Regarding Matter Against Blue Tee Corp., Brown Strauss, Inc., David P. Alldian, Richard A. Secrist, and William M. Kelly:

**For the State of Illinois**:


PEOPLE OF THE STATE OF ILLINOIS
*ex rel*. LISA MADIGAN, Attorney

General of the State of Illinois


MATTHEW J. DUNN, Chief
Environmental/Asbestos Litigation Division



By:     __/s/ Andrew Armstrong_____
        ANDREW B. ARMSTRONG, Chief
        Environmental Bureau South

Signature Page for Consent Decree Regarding Matter Against Blue Tee Corp.; Brown Strauss, Inc., David P. Alldian, Richard A. Secrist, and William M. Kelly:

**FOR THE STATE OF MISSOURI:**


Date:   10/12/18


_____/s/ Dru Buntin for CC_____
Carol S. Comer, Director
Missouri Department of Natural Resources
P.O. Box 176
Jefferson City, Missouri 65102-0176


Date:

___/s/ Mary Long, Asst. Attorney General_____
Mary A. Long
Assistant Attorney General
815 N. Olive Street, P.O. Box 861
St. Louis, MO 63188

Signature Page for Consent Decree Regarding Matter Against Blue Tee Corp., Brown Strauss, Inc., David P. Alldian, Richard A. Secrist, and William M. Kelly:

**FOR THE STATE OF MONTANA:**

TIM FOX
Montana Attorney General

Date: October 10, 2018

/s/ Katherine Hausrath
HARLEY HARRIS
Supervising Assistant Attorney General
KATHERINE M. HAUSRATH
Assistant Attorney General
Montana Natural Resource Damage Program
Montana Department of Justice
P.O. Box 201425
1720 Ninth Avenue
Helena, Montana 59620-1425
Telephone: (406) 444-0290
E-mail: KHausrath@mt.gov

Date: 10/10/2018

/s/ George Mathieus
GEORGE MATHIEUS
Deputy Director
Montana Department of Environmental Quality

Date: 10/10/2018

/s/ Jonathan Morgan
JONATHAN MORGAN
Special Assistant Attorney General
Montana Department of Environmental Quality
1225 Cedar Street, PO Box 200901
Helena, MT 59620-0901

Signature Page for Consent Decree Regarding Matter Against Blue Tee Corp., Brown Strauss, Inc., David P. Alldian, Richard A. Secrist, and William M. Kelly:


## FOR THE STATE OF OKLAHOMA


_____/s/ Jennifer L. Lewis_____10/12/2018_____
Jennifer L. Lewis
Assistant Attorney General
Oklahoma Office of the Attorney General
Oklahoma City, OK 73105
(405) 522-3109
Jennifer.Lewis@oag.ok.gov

Signature Page for Consent Decree Regarding Matter Against Blue Tee Corp., Brown Strauss, Inc., David P. Alldian, Richard A. Secrist, and William M. Kelly:

**FOR THE STATE OF TENNESSEE**

___/s/ Wilson S. Buntin_____
Wilson S. Buntin
Senior Assistant Attorney General
Tennessee Attorney General's Office
P.O. Box 20207
Nashville, TN 37202
(615) 253-5118
wilson.buntin@ag.tn.gov

Signature Page for Consent Decree Regarding Matter Against Blue Tee Corp., Brown Strauss, Inc., David P. Alldian, Richard A. Secrist, and William M. Kelly:

**FOR THE EASTERN SHAWNEE TRIBE OF OKLAHOMA,**
**THE OTTAWA TRIBE OF OKLAHOMA, THE PEORIA**
**TRIBE OF INDIANS OF OKLAHOMA,**
**THE SENECA-CAYUGA NATION, THE WYANDOTTE**
**NATION, THE MIAMI TRIBE OF OKLAHOMA,**
**AND THE CHEROKEE NATION**

    /s/ Brian J. Cleary
Brian Cleary

Signature Page for Consent Decree Regarding Matter Against Blue Tee Corp., Brown Strauss, Inc., David P. Alldian, Richard A. Secrist, and William M. Kelly:

**FOR** ___Blue Tee Corp._____**:**
[Print name of Settling Defendant]

___9-24-2018_____          _____/s/ David P. Alldian_____
Date                                      Name (print): David P. Alldian
                                             Title:   President
                                             Address:

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print):  _Gerald P. Greiman_____
Title:              _Partner_____
Company:       _Spencer Fane LLP_____
Address:         _1 N. Brentwood Blvd., Suite 1000
Phone:           _(314) 333-3901_____
email:             _ggreiman@spencerfane.com_____

Signature Page for Consent Decree Regarding Matter Against Blue Tee Corp., Brown Strauss, Inc., David P. Alldian, Richard A. Secrist, and William M. Kelly:

**FOR** ___Brown Strauss, Inc._____**:**

[Print name of Settling Defendant]

__September 28, 2018____
Date

_____/s/ Ryan Secrist_____
Name (print): Ryan Secrist
Title:        President
Address:    2495 Uravan St., Aurora, CO 80011

Signature Page for Consent Decree Regarding Matter Against Blue Tee Corp., Brown Strauss, Inc., David P. Alldian, Richard A. Secrist, and William M. Kelly:


**FOR** ___David P. Alldian_____**:**
[Print name of Settling Defendant]



___9-24-2018_____                    _____/s/ David P. Alldian_____
Date                                 Name (print): David P. Alldian
                                     Title:
                                     Address:


Agent Authorized to Accept Service on Behalf of Above-signed Party:

                         Name (print):  _Robert Labate_____
                         Title:         _Partner_____ _____
                         Company:       _Holland & Knight LLP_____
                         Address:       _50 California St., Suite 2800___
                         Phone:         _(415) 743-6991_____
                         email:         _robert.labate@hklaw.com_____

Signature Page for Consent Decree Regarding Matter Against Blue Tee Corp., Brown Strauss, Inc., David P. Alldian, Richard A. Secrist, and William M. Kelly:


**FOR** ___Richard A. Secrist_____**:**
[Print name of Settling Defendant]



___9-29-2018_____          ____/s/  Richard A. Secrist_____
Date                                    Name (print): Richard A. Secrist
                                        Title:
                                        Address:



Agent Authorized to Accept Service on Behalf of Above-signed Party:

                    Name (print):  _Robert Labate_____
                    Title:          _Partner_____ _____
                    Company:        _Holland & Knight LLP_____
                    Address:        _50 California St., Suite 2800___
                    Phone:          _(415) 743-6991_____
                    email:          _robert.labate@hklaw.com_____

Signature Page for Consent Decree Regarding Matter Against Blue Tee Corp., Brown Strauss, Inc., David P. Alldian, Richard A. Secrist, and William M. Kelly:

**FOR** ___William M. Kelly_____**:**
[Print name of Settling Defendant]

__9-24-2018_____                          _____/s/ William M. Kelly_____
Date                                      Name (print): William M. Kelly
                                          Title:
                                          Address:

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print):  _Robert Labate_____
Title:         _Partner_____ _____
Company:       _Holland & Knight LLP_____
Address:       _50 California St., Suite 2800_____
Phone:         _(415) 743-6991_____
email:         _robert.labate@hklaw.com_____